**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARK CHIE, | : | No. 3:25cv1056 |
|      **Plaintiff** | : | |
| | : | **(Judge Munley)** |
|   **v.** | : | |
| | : | |
| CUSTOM LAMINATING | : | |
| CORPORATION, | : | |
|      **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## <u>MEMORANDUM</u>

In his amended complaint, Plaintiff Mark Chie pursues race, national origin, and ethnicity discrimination claims against his former employer Defendant Custom Laminating Corporation ("Custom Laminating") pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"). Before the court is Custom Laminating's motion to dismiss. For the reasons set forth below, the motion will be denied.

**Background**

Chie is of Hawaiian ethnicity.[1] (Doc. 8, Am. Compl. ¶ 23). He identifies his race as half Caucasian and half Asian. (<u>Id.</u>)

---

[1] The facts in this background section are derived from the allegations in Chie's amended complaint, which are assumed to be true at this posture. <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted). The court makes no determination as to the veracity of these allegations.

Defendant Custom Laminating hired Chie as a laminator helper on December 5, 2022. (Id. ¶ 24). Plaintiff claims that defendant's employees continuously questioned him about his national origin, race, and ethnicity throughout his employment. (Id. ¶ 26). Upon discovery of plaintiff's racial and ethnic background, defendant's employees allegedly began harassing the plaintiff. (Id. ¶ 29).

Once Chie disclosed that he was Hawaiian, the employees allegedly began calling the plaintiff, "Pineapple." (Id.) By mid-December 2022, Chie complained to his production floor supervisor, Chris Harvey. (Id. ¶ 30). Harvey told the plaintiff he would address the alleged harassment, but it continued. (Id. ¶ 31).

On December 27, 2022, Chie was switched from first shift to night shift after he completed his training. (Id. ¶ 32). Plaintiff thereafter started work with David Burns,[2] a Caucasian laminator operator. (Id. ¶ 33). During that shift, Burns purportedly criticized and nitpicked plaintiff's work, telling him to "slow it down," but did not treat Caucasian workers in this manner. (Id. ¶¶ 34-35).

On January 3, 2023, Chie worked with Burns again. (Id. ¶ 36). According to the complaint, Burns rebuffed a hello from the plaintiff, refused plaintiff's help, nitpicked the plaintiff's work product, and lost his temper several times. (Id. ¶¶

---

[2] The amended complaint identifies this individual as "David Burns." (Doc. 8, ¶ 33). Chie's Charge of Discrimination Form lists the name of the individual as "David Bream." (Doc. 12, Def. Ex. A at 2).

2

36-40). Burns also stated, "Do you remember what I told you last time? Slow it down." Id. ¶ 39. According to plaintiff, "Burns became so aggressive…that he ripped up [Custom Laminating's] material in [p[laintiff's presence in a forceful manner to prove his point." Id. ¶ 41. Burns claimed it was because he was "having a bad day." (Id. ¶ 40). As alleged, this behavior was not directed towards Causasian employees, only the plaintiff. (Id.)

Per the complaint, Chie stepped away and reported his interactions with Burns to the night shift supervisor, Domingo Cruz. (Id. ¶ 42). Cruz recommended that plaintiff report Burns's conduct to the lead, Jared; however, plaintiff maintains he did not do so at that time because he feared retaliation during his shift. [3] (Id. ¶ 43).

When Chie returned, he expressed to Burns that "no matter what [he] does, it seems to be wrong," and Burns replied, "If I'm being an asshole, just let me know." Id. ¶¶ 44–45. Nonetheless, plaintiff alleges that Burns continued to treat him differently. Id. ¶ 46.

The next day, January 4, 2023, Chie called Cruz stating that he did not want to work with Burns again due to his harassing and discriminatory behavior. (Id. ¶ 47). Cruz told plaintiff to call Chris Harvey, the production floor supervisor. (Id. ¶ 48).

---

[3] Jared's last name is unknown to the plaintiff.

3

Chie asserts that he called Harvey and filed a complaint of harassment and discrimination. (Id. ¶ 49).  Harvey purportedly agreed that the behavior was unacceptable and said that he would handle the situation. (Id.)  The following day, January 5, 2023, Harvey assigned plaintiff to a new section, but, as alleged, did not reprimand Burns or take any other corrective action. (Id. ¶ 50).  Around this time, plaintiff also asked Harvey to review video footage of the previous workday which would support his complaint and Harvey agreed to do so. Id.

When Chie arrived to work on January 9, 2023, he found a pineapple cloth hanging from his locker. (Id. ¶ 53).  It is unknown to the plaintiff who specifically performed this act. (Id. ¶ 55).

On the same day, Harvey and an operations manager, Maryann, called Chie into a meeting.[4] (Id. ¶ 56).  During this meeting, Maryann terminated plaintiff for "allegedly not wearing safety goggles on his face at all times." (Id. ¶ 57).  Plaintiff contends that other employees were not terminated over their failure to wear safety goggles. (Id. ¶ 61).  The complaint also sets forth that defendant did not provide any warning to plaintiff about the ostensible safety goggle violation prior to termination, as listed in the defendant's formal written policies. (Id. ¶ 62).  Plaintiff maintains that he asked Maryann if his termination was retaliation for filling a complaint of discrimination and harassment. (Id. ¶ 58).  Maryann

_____

[4] Maryann's last name is unknown to the plaintiff.

4

allegedly replied it was not. (Id. ¶ 59).  However, Maryann purportedly stated that it was easier to get rid a new employee on probation, like Chie, rather than a full-time employee like Burns. (Id. ¶ 60).

On January 19, 2023, plaintiff dual-filed a charge of discrimination ("charge") with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (Id. ¶¶ 13-14).  The EEOC issued plaintiff a Dismissal and Notice of Rights ("right-to-sue letter") dated March 6, 2024. (Id. ¶ 15).  Plaintiff's counsel attests that his office did not receive a mailed copy of the Right to Sue letter until March 13, 2025 and that they never received an electronic copy. (Id. ¶¶ 16-17).

Based upon these facts, Chie filed this action on June 11, 2025. (Doc. 1 Compl.).  Plaintiff then filed an amended complaint in response to Custom Laminating's initial motion to dismiss. (Doc. 8, Am. Compl.)  The amended complaint advances four different claims.  Counts One and Two assert discrimination claims under Title VII and the PHRA. Counts Three and Four allege that the plaintiff experienced workplace retaliation in violation of Title VII and the PHRA.

Custom Laminating's motion to dismiss primarily challenges the timeliness of this action.  In the alternative, defendant requests that discovery be bifurcated

5

to first resolve whether this action was timely filed. (Doc. 12, Def. Reply Br.).

Having been fully briefed by the parties, the motion is ripe for disposition.

**Jurisdiction**

The court has federal question jurisdiction over Chie's Title VII claims, 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiff's PHRA claims. 28 U.S.C. § 1367(a).

**Standard of Review**

Custom Laminating has filed a motion to dismiss Chie's complaint under Rule 12(b)(6). To survive a motion to dismiss for failure to state a claim, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). This means that a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief which is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. <u>Oldham v. Pennsylvania State Univ.</u>, 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted). The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. <u>See</u> <u>Lutz v. Portfolio Recovery Assocs.</u>, LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted).

The third step evaluates the plausibility of the remaining allegations. <u>Id.</u> In evaluating plausibility of the plaintiff's allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. <u>Id.</u> (citations omitted).

**Analysis**

### 1. Timeliness of this Action

Custom Laminating's motion to dismiss argues that Chie's Title VII claims were not filed by the statutory deadline. The defendant thus seeks dismissal of the plaintiff's federal discrimination and retaliation claims with prejudice.

Although the statute of limitations is an affirmative defense, timeliness issues may be considered at this posture if they are apparent on the face of the

7

complaint.[5] See Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citing Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir.1978) and Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).

Under Title VII, a plaintiff must file a charge of discrimination with the EEOC. 42 U.S.C. § 2000e-5(b).  The charge must be filed within 180 days after the last alleged unlawful employment practice, or within 300 days from the last unlawful employment practice if the plaintiff is cross-filing in a "deferral state" with a parallel state agency. 42 U.S.C. § 2000e-5(e)(1).

Once the EEOC receives the contents of the charge and decides they are not filing suit, they will issue a right to sue letter. 42 U.S.C. § 2000e-5(f)(1).  This allows an individual to file suit in a United States District Court within 90 days of receipt of the notice. Id.  "The on-set of the 90-day period is generally considered to be the date on which the complainant receives the right-to-sue letter."

See Burgh v. Bor. Council of Montrose, 251 F.3d 465, 470. (3d Cir. 2001)

---

[5] Chie's amended complaint attaches a declaration of his counsel's employee with respect to receipt of the right-to-sue letter. (Doc. 8-1, Dec. E. Hoobler).  Custom Laminating's brief in support of the motion attaches the charge of discrimination and the right-to-sue letter itself. (Docs. 12-2, 12-3).  In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar, Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).  Therefore, because the amended complaint addresses receipt of the right-to-sue letter, the declaration and administrative documents will be considered in conjunction with plaintiff's allegations.

(quoting Seitzinger v. Reading Hosp. and Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999); Mosel v. Hills Dept. Store, Inc., 789 F.2d 251, 252 (3d Cir. 1986) (per curiam)). "Courts strictly construe the 90-day period." Id. In the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed." Id. (quoting Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 176 (3d Cir. 1999)). The Supreme Court determined, "'[t]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect' by an attorney," meaning equitable tolling should not be applied to situations where a claimant, or their counsel, simply failed to exercise due diligence. Irwin v. Dep't of Veteran Affairs, 498 U.S. 89, 96 (1990). When that right to sue letter's date of receipt is unknown, the court assumes the plaintiff received the letter three days after the EEOC sent it. Seitzinger v Reading Hosp. and Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999). A plaintiff can rebut the three-day presumption by presenting evidence of delayed receipt. Id.

In this case, Chie dual-filed the charge of discrimination on January 19, 2023 with the EEOC and the PHRC, ten days after his termination on January 9, 2023. (Doc. 8, Am. Compl. ¶ 13-14). Thus, plaintiff filed the charge well within the 300-day time limitation from when the last unlawful employment practice occurred. (Id.) In his charge, Chie alleged that he was 1) subjected to discrimination on the basis of race and national origin; and 2) retaliated against

9

for complaining of this discrimination. (Id. ¶ 13).  The EEOC issued plaintiff a right-to-sue letter relative to the charge dated March 6, 2024. (Id. ¶ 15).  Plaintiff's counsel claims his office did not receive a mailed copy of the right-to-sue letter from the EEOC until March 13, 2025. (Id. ¶ 16).  An affidavit has been provided to support the date of receipt of the letter. (Doc. 8-1, Am. Compl. Ex. A at 2-4).

Upon review, Custom Laminating's arguments cannot be resolved at this stage.  If the evidence puts the facts about receipt of the right-to-sue letter in dispute, that creates a genuine issue of material fact, which cannot be resolved on a motion for summary judgment, let alone a motion to dismiss.  Hayes v. N.J. Dept. of Hum. Servs., 108 F.4th 219, 224 (3d Cir. 2024) (citing Ebbert v. DaimlerChrysler Corp., 319 F.3d 103, 117 (3d Cir. 2003)).[6]  Therefore, the motion to dismiss will be denied.

---

[6] In Hayes, plaintiff filed a charge with the EEOC for claims of sexual harassment and retaliation by plaintiff's employer. 108 F.4th at 220.  The plaintiff's attorney received and read an email from the EEOC notifying counsel that the right to sue letter would be issued. Id.  The EEOC uploaded the right to sue letter to the portal the same day they sent the email. Id.  A mailed copy of the right to sue letter was not received, per the sworn testimony in the case. Id. at 221, 224.  Five months later, plaintiff's counsel's office contacted EEOC for a copy of the right-to-sue letter. Id. at 221.  Plaintiff later filed a lawsuit more than eight months after the mailing date listed on the right-to-sue letter, but fewer than 90 days after plaintiff's lawyer claimed to receive it. Id.  The court held that: 1) an email saying the letter will be posted; or 2) uploading the letter to the portal with no communication was not an equivalent to the letter itself. Id. at 223.  The court also held that since there was evidence showing plaintiff never received a mailed copy of the letter, the question of timely receipt should be resolved by a jury. Id. at 224.

## 2. Bifurcation of Discovery

Sensing this outcome, Custom Laminating requests bifurcation of discovery to focus on the timeliness issues. (Doc. 12, Reply Br. at 1). The court will deny this request.

"The decision to bifurcate discovery, and the manner in which bifurcation should be ordered, is left to the trial court's informed discretion and must be decided on  a case-by-case basis." See Idzojtic v. Pennsylvania R.R. Co., 456 F.2d 1228, 1230 (3d Cir. 1972) ("The district court is given broad discretion in reaching its decision whether to separate issues of liability and damages."). In exercising its discretion, the court "must weigh the various considerations of convenience, prejudice to the parties, expedition, and economy of resources." Emerick v U.S. Suzuki Motor Corp., 750 f.2d 19,22 (3d Cir. 1984). "The moving party bears the burden of establishing that bifurcation is appropriate." See Innovatinve Office Prods., Inc. v. Spaceco, Inc., Civ. No. 05-cv-4037, 2006 WL 1340865, *1 (E.D.Pa. May 15, 2006). The Third Circuit has also noted that "bifurcation is appropriate where litigation of one issue … may eliminate the need to litigate the second issue." In re Bayside Prison Litig., 157 F. App'x 545, 547-48 (3d Cir. 2005) (emphasis in original).

Here, bifurcation of discovery on the issue of plaintiff's alleged failure to timely file his Title VII claims would not be convenient, expeditious, or conserve

11

resources.  Normal discovery proceedings would present all of the information necessary to determine the timeliness of filing as well as any other evidentiary issues raised by the defendant. (Doc. 10, Def. Br. Opp'n. at 3).  If the court were to grant bifurcated discovery, set a dispositive motion deadline, and the timeliness of the filing was not resolved by that motion, the parties would then need to restart discovery to further explore the merits of plaintiff's claims.  Clearly, that proposed avenue is not convenient or expeditious, and it would not conserve resources.

### 3. Hostile Work Environment

Custom Laminating's motion to dismiss raises other issues.  First, defendant argues that the plaintiff did not exhaust all administrative remedies with respect to the hostile work environment claims.  Second, defendant argues that plaintiff's amended complaint does not support a claim for a racially hostile work environment.  The court considers these arguments in conjunction with each other.

"It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." Robinson v. Dalton, 107 F.3d 1018, 1020  (3d Cir. 1997).  "The jurisdictional prerequisites to a suit under Title VII are the filing of charges with the EEOC and the receipt of the Commission's statutory notice of the right to sue." Ostapowicz

v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 798 (1973)). The "fundamental aim of the pre-suit requirements is to 'give prompt notice to the employer' and 'encourage the prompt processing of all charges of employment discrimination.' " Simko v. U.S. Steel Corp., 992 F.3d 198, 207 (3d Cir. 2021) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 121 (2002)). The exhaustion inquiry is highly fact specific. Id.

Custom Laminating argues that Chie's charge of discrimination does not encompass facts necessary to support a hostile work environment claim. Upon review, the facts alleged in the charge, (Doc. 10-2), are essentially the same as the operative facts alleged in the amended complaint, (Doc. 8). Therefore, defendant is really arguing that the plaintiff has not alleged hostile work environment as a plausible theory of recovery in this case.

Title VII "may be violated when an employee's racist behavior creates a hostile work environment for his colleagues." Kengerski v. Harper, 6 F.4th 531, 537 (3d Cir. 2021). To succeed on a hostile work environment claim, the plaintiff must establish that: 1) the employee suffered intentional discrimination because of his/her protected class, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the

existence of *respondeat superior* liability. Mandel v. M&Q Packing Corp., 706 F.3d 157, 167 (3d Cir. 2013).

In making out a hostile work environment claim, "a plaintiff needs to show that the environment was actually hostile, i.e., that the offensive conduct at work was either 'severe' or 'pervasive.' " Kengerski, 6 F.4th at 537 (citing Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017)). When determining whether an environment is sufficiently hostile or abusive, courts are directed to look at all the circumstances, "including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " Faragher v. City of Boca Raton, 524 U.S. 775, 787–78 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "[T]he resolution of that question is context-specific," Castleberry, 863 F.3d at 264, with consideration of the overall scenario, Qin v. Vertex, Inc., 100 F.4th 458, 471 (3d Cir. 2024). Additionally, " 'conduct must be extreme' to satisfy this standard, so 'simple teasing, offhand comments, and isolated incidents (unless extremely serious)' are inadequate." Mandel, 706 F.3d at 168 (quoting Faragher, 524 U.S. at 788). Conduct must also be severe or pervasive enough to create an "objectively hostile or abusive work environment," that is, "an environment that a reasonable person would find hostile or abusive." Harris, 510 U.S. at 21.

Whether the work environment "would reasonably be perceived, and is perceived, as hostile or abusive...is not, and by its nature cannot be, a mathematically precise test." Harris, 510 U.S. at 22. "In considering the severity of the discriminatory conduct," the court looks to "whether the conduct creates 'an attitude of prejudice that injects hostility and abuse into the working environment.' " Qin, 100 F.4th at 471 (quoting Ali v. Woodbridge Twp. Sch. Dist., 957 F.3d 174, 182 (3d Cir. 2020) (additional citation omitted)). The court also weighs whether the conduct was "physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. In considering the severity or pervasiveness of harassment, the court must also look to the frequency of the alleged conduct in the context of the case. Qin, 100 F.4th at 471.

With that said, Chie's amended complaint provides sufficient allegations to proceed on a hostile work environment theory. Per plaintiff, workplace harassment started almost immediately with repeated inquiries by his coworkers into his racial and ethnic background. (Doc. 8, Am. Compl. ¶ 27). After revealing his Hawaiian ethnicity, Chie alleges that his coworkers "collectively and repeatedly" called him "Pineapple." (Id. ¶ 29). He also discovered a pineapple cloth on his locker on the date he was terminated. (Id. ¶¶ 53, 56–57). Along the way, he was assigned to work with an "aggressive" individual who berated him

15

and treated him differently than other coworkers. (Id. ¶¶ 33–47).  Management allegedly stated that such conduct was "unacceptable" but did not do anything about it. (Id. ¶ 49).  Discovery will bear out the extent of any workplace commentary and shed light on whether the plaintiff's former coworkers targeted him for harassment on the basis of race, national origin, or ethnicity.  In the meantime, the defendant's attempts to dismiss a hostile work environment theory of discrimination at this stage of the case will be denied.

**Conclusion**

For the reasons set forth above, defendant's motion to dismiss will be denied.  An appropriate order follows.

Date: 7/21/26

JUDGE JULIA K. MUNLEY
United States District Court

16